## The Conversion Center, Inc. *v.* Zoning Board of Adjustment of Philadelphia.

Argued April 14, 1971, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MANDERINO, MENCER and ROGERS.

*Albert Der Movsesian,* with him *Semisch & Der Movsesian,* for appellant.

*Carl K. Zucker,* Assistant City Solicitor, with him *Levy Anderson,* City Solicitor, for appellee.

*Edward J. David,* with him *Henry B. Fitzpatrick* and *Broderick, Schubert & Fitzpatrick,* for intervening appellees.

OPINION BY JUDGE ROGERS, June 7, 1971:

This zoning case has had a long, tortuous and somewhat mysterious history.

In 1961, the appellant, the Conversion Center, Inc., a non-profit corporation founded for religious purposes, purchased a house and lot at 5840 Overbrook Avenue, Philadelphia. The ground floor of the house, built at the turn of the century, was thereafter used as a place of worship by two fundamentalist religious groups, one affiliated with the appellant and another not so affiliated. Worship services were held on Wednesdays, Fridays and Sundays. Rooms on the second and third floors of the large dwelling accommodated missionaries passing through Philadelphia and some office work was conducted on the premises by the affiliated church.

Church school classes were also held in the building. All of this activity, except the worship services of the non-affiliated group, was under the general direction of the Reverend Alexander O. Dunlap, president of the appellant corporation and a minister of the gospel. The property is located in an R-2 Zoning District of the City of Philadelphia where churches, chapels, convents, monasteries or other places of worship and their adjacent residential dwellings are permitted uses. These facts, developed at two hearings of the Zoning Board of Adjustment are undisputed.

In *1965*, the appellant was advised by the city zoning authorities that its use of the property was unlawful because it had not applied for and received a use registration permit.[1] In response, the appellant applied for registration of use of the premises as a church, convent and accessory garage. The permit was refused on the ground that a side yard was only two feet wide instead of the required 10 feet.[2] The Zoning Board of Adjustment, on appeal, refused a requested variance for the alleged offending side yard deficiency on the ground that no unnecessary hardship had been shown. *It found as a fact that the property was being used as a church and convent.* On further appeal, a judge of Court of Common Pleas of Philadelphia County remanded the record to the Board for the purpose of taking testimony with regard to the dimensions of the lot and location of the improvements thereon. In November 1966, a

---

[1] Section 14-7702(5) of Philadelphia Code of Ordinances provides: "A use registration permit shall be required for every new use commenced on any land or in any structure *except for use as a single family dwelling or place of worship.*" (Emphasis supplied.)

[2] The deficiency in side yard resulted from the presence of a porte-cochere which appellant offered at a Board of Adjustment hearing to remove if required. Section 14-104(1) of the City Code provides that nonconforming structures antedating the Zoning Code, which this clearly does, are permitted to remain.

further hearing of the Board was conducted at which testimony was taken, including a second examination into the use of the property for church services. The only change in use developed at this second hearing was evidence of the discontinuance of the Sunday services of the non-affiliated group resulting from its apprehension over the refusal of the use permit. Members of that group had been present at the first hearing and had stated their desire to resume services at the location if lawful. This time, the Board refused what it gratuitously characterized as an application for a variance to use the property as a conversion center, which it concluded was not a permitted use. The Board made a supplemental finding that the premises were not being used as a church and that "there is no designated pastor and definite congregation."[3] On appeal to the Court of Common Pleas of Philadelphia County, the decision of the Board was affirmed.

At neither hearing before the Board was the testimony of the appellant's witness, the Reverend Mr. Dunlap, rebutted, contradicted or disputed in any respect. The Board's finding at the first hearing that the property was used as a church and convent, clearly supported in the testimony, was given further support at the second. The facts are that since 1961 two groups of persons have been using this house as a place at which to worship God according to their fashion. As for the Board's supplemental finding that this was a conversion center rather than a church, there is nothing in the record descriptive of a conversion center nor is there evidence of any activity carried on at the property which would constitute such a use, however defined. Appellant's use of its property comports with any conceivable definition of a church or other place of worship.

---

[3] That these standards should be applied to an ordinance of a city founded by William Penn is anomalous indeed.

The appellant was not required to obtain the registration permit, the denial of which occasioned this litigation, nor was it required to obtain a variance, the refusal of which prolonged it.

Order reversed.